UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAVARES FELTON,

        Petitioner,

v.                               CASE NO. 2:16-cr-884-FtM-38CM
                                       (2:15-cr-42-FtM-38CM)

UNITED STATES OF AMERICA,

        Respondent.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The defendant raises a number of issues in his multiple motions pursuant to 28 U.S.C. § 2255.   All are without merit and the Court should deny his motion.

## I.   STATEMENT OF CASE

1.      On April 16, 2015, a grand jury indicted Tavares Felton, case 2:15-cr-00042-SPC-CM, doc. 3, on charges stemming from his possession of two assault rifles and from his possession with intent to distribute heroin, crack, and xanax.

2.      Felton filed motions to suppress physical evidence that law enforcement obtained from his grandmother's home, and statements he made during two subsequent interviews with law enforcement.   Case 2:15-cr-00042-SPC-CM, docs. 23-25.

1

3.     The Court denied the motion to suppress physical evidence because the

defendant failed to make a showing under *Franks v. Delaware*, 438 U.S. 154 (1978),

and because the defendant failed to establish standing to challenge the search of his

grandmother's house.   Case 2:15-cr-00042-SPC-CM, doc. 49.

4.     The Court denied the defendant's motion to suppress his statement

because he was properly administered his *Miranda* warnings.   Case 2:15-cr-00042-

SPC-CM, doc. 48.

5.     On January 30, 2015, after plea bargaining with the government,

Petitioner pled guilty to pursuant to a written plea agreement, to Count Four of the

Indictment.   Case 2:15-cr-00042-SPC-CM, doc. 71 at 1.   Count Four charges the

defendant with Felon in Possession of a Firearm, in violation of 18 U.S.C.

§§ 922(g)(1) and 942(e)(1).   Case 2:15-cr-00042-SPC-CM, docs. 3 at 2, 71 at 1. The

United States agreed to drop the drug-related charges.

6.     After "cautioning and examining the Defendant under oath concerning

each of the subjects mentioned in Rule 11," the Court determined that Petitioner's

guilty plea was "knowledgeable and voluntary as to Count Four, and that the offense

charged [was] supported by an independent basis in fact containing each of the

essential elements of such Count." Case 2:15-cr-00042-SPC-CM, docs. 72, 74.

7.     As part of his plea agreement, Petitioner expressly waived the right to

appeal his sentence:

> . . . on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violated the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right tot appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

Case 2:15-cr-00042-SPC-CM, doc. 71 at 11.

8.     The defendant's sentencing guideline range for the offense of conviction was 188 to 235 months (offense level 31, criminal history category VI).   On April 18, 2016, the Court sentenced Petitioner to 188 months' imprisonment, to be followed by 60 months' supervised release.   Case 2:15-cr-00042-SPC-CM, docs. 80, 99.   The government agreed to dismiss counts 1 through 3 relating to the heroin, crack cocaine, and Xanax.   Based upon the facts set forth in the PSR, if the defendant had pled guilty to the heroin charge, he would have been subject to the career offender provision of U.S.S.G. § 4B1.1(b)(2), and his guideline range would have been the same as the offense of conviction (offense level 31, criminal history category VI, guideline range of 188-235 months).

9.     The defendant's attorneys, Manny Arora and Douglas Molloy, discussed filing an appeal with the defendant.   The defendant's attorneys indicated to Mr. Felton that he had waived his right to appeal with the exception of the few

3

narrow circumstances mentioned in his appeal waiver, and that even if he were not barred from filing an appeal, there would otherwise be no substantive merit to an appeal.   Exhibits A and B.

10.    Mr. Felton never requested that his attorneys file an appeal, and an appeal was not filed.   Exhibits A and B.

11.    Petitioner filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, (case 2:16-cv-884-SPC-CM, doc. 1), an amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, (case 2:16-cv-884-SPC-CM, doc. 10), a Supplemental and Amended Motion to vacate, set aside, or correct sentence (case 2:16-cv-884-SPC-CM, doc. 15), and Motion to Amend his Petition (case 2:16-cv-884-SPC-CM, doc. 21).   Petitioner's claims are far from clear, but appear to set forth six alleged grounds for relief, most sounding in ineffective assistance of counsel:

1. Although he expressly waived his right to appeal under most circumstances in his plea agreement, the Petitioner claims he requested his counsel to file an appeal, but his counsel refused to file the appeal;

2. Although he failed to make a showing under *Franks v. Delaware*, 438 U.S. 154 (1978), that he was even entitled to a hearing, or to call witnesses, relating to the suppression of physical evidence in the first instance, Petitioner claims his counsel provided ineffective assistance because he failed to call certain witnesses during the hearing;

3. His counsel failed to the challenge the fact that two state convictions for trafficking in illegal drugs were not "serious drug offense[s]" under the ACCA;

4. Although Petitioner did not serve as an informant, nor did allege he had the authority to possess firearms, Petitioner claims he was somehow permitted to possess the assault rifles in this case because he was in the process of signing up to be a confidential informant;

5. Although the United States provided evidence that it did not possess "seized funds" previously belonging to Petitioner, Petitioner alleges that the United States committed prosecutorial misconduct by hiding their possession of the funds. Further, Petitioner claims his counsel provided him with ineffective assistance by failing to inform him that state officials possessed the funds.

6. That the petitioner's plea was not voluntary

## II.   <u>MEMORANDUM OF LAW</u>

A.   *Timeliness*

Petitioner's conviction became final on May 2, 2016, when the time for filing a direct appeal had passed.   Therefore, he had until May 2, 2017, to file this motion pursuant to § 2255.   *See* Case 2:15-cr-00042-SPC-CM. Doc. 80; *see Adams v. United States*, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999) (when defendant does not pursue direct appeal, conviction becomes final when time for filing a direct appeal expires). Petitioner filed an Amended Motion to Vacate, Set Aside, Or Correct Sentence Pursuant to 28 U.S.C. § 2255 on January 6, 2017.   Doc. 10.   Therefore, Petitioner's motion is timely.   *See* 28 U.S.C. § 2255 ¶ 6(1).

B.   *Procedural Default*

Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal.   *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 165 (1982) (collecting cases).   Because collateral review is not a

substitute for a direct appeal, the general rules have developed that: (1) a defendant must assert all available claims on direct appeal, *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir.1994); and (2) "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.' " *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988). Accordingly, a non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, *Frady*, 456 U.S. at 165, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice. *Stone v. Powell*, 428 U.S. 465, 477 n. 10, (1976); *Lynn v. United States*, 365 F.3d 1225, 1232–33 (11th Cir. 2004).

Petitioner's claims that the United States committed prosecutorial misconduct are procedurally defaulted. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001); *Jones v. United States*, 153 F.3d 1305, 1307 (11th Cir. 1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994); *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)).

There are two exceptions to this rule.   *Lynn*, 365 F.3d at 1234.   The first exception requires that the Petitioner "show cause for not raising the claim . . . on direct appeal and actual prejudice from the alleged error."   *Id.*   (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Mills*, 36 F.3d at 1055; *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990); *Greene*, 880 F.2d at 1305; *Martorana v. United States*, 873 F.2d 283, 284 (11th Cir. 1989); *Parks v.United States*, 832 F.2d 1244, 1246 (11th Cir. 1987)).   The second exception is actual innocence, which is shown through "'new reliable evidence . . . not presented at trial.'" *High v. Head*, 209 F.3d 1257, 1270 (11th Cir. 2000) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Petitioner appears to allege that he was an informant at the time of his arrest and committed the acts he is charged with while cloaked with the authority of the Fort Myers Police Department.   Case 2:16-cv-884-SPC-CM. Doc. 15 at 1-7. Moreover, Petitioner claims that the United States committed prosecutorial misconduct by concealing Petitioner's status as an informant.   Case 2:16-cv-884-SPC-CM. Doc. 15 at 3.   These claim falls into neither exception to the procedural bar.   First, there is no evidence that petitioner is actually innocent.   As state below, the defendant had not yet been signed up to be a confidential informant, but even if he had, there is no evidence that Fort Myers Police Department authorized the defendant to possess, among other things, 9 ounces of vacuum sealed heroin and two assault rifles.   Moreover, even if he was an informant, and even if he was authorized to be storing heroin, crack cocaine, and assault rifles in his house, petitioner would

7

need to establish that he was actually innocent of **both** the firearm offense, **and** the dismissed heroin count.   *See United States v. Montano*, 398 F.3d 1276, 1285 (11th Cir. 2005) (holding that an actual innocence claim fails where "the Government has foregone several more serious charges in the course of plea bargaining.")   He has not even attempted to do this.   Petitioner's claim fails to meet the requirements for the cause and prejudice exception as well.   *See Lynn*, 365 F.3d at 1234.   Petitioner fails to point to any "objective factor external to the defense" that prevented him from raising the claim of prosecutorial misconduct while before the district court or on direct appeal.   *Id.*   Thus, Petitioner's allegation of prosecutorial misconduct is procedurally defaulted and barred from consideration in this § 2255 motion.

C.   *Waiver*

Petitioner has waived the right to appeal his sentence "on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the</u> Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).   Doc. 71 at 11.

8

The defendant does not allege any of those circumstances exist here, but the defendant did not expressly waive, in his plea agreement, the right to collaterally attack his sentence.

      D.    *Merits of Defendant's Claims*

      1.    The *Strickland* Standard

The Petitioner's six grounds for relief, all sounding in ineffective assistance of counsel, in his multiple petitions and amended petitions are without merit and should be denied.   The Sixth Amendment right to counsel is the right to effective assistance of counsel.   *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).   The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.   *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984).   Because a lawyer is presumed to be competent to assist a defendant, the burden is on the accused to demonstrate the denial of the effective assistance of counsel.   *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating a conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the defendant was prejudiced by the deficient performance.   *Strickland*, 466 U.S. at 687, 694.   "There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an

9

insufficient showing on one." *Id.* at 697.   Thus, if the defendant fails to show that

he is prejudiced by the alleged errors of counsel, this Court may reject the

defendant's claim without determining whether the counsel's performance was

deficient.   *See Coulter v. Herring*, 60 F.3d 1499, 1504 n.8 (11th Cir. 1995).

For performance to be deficient, a defendant must establish that, in light of all

the circumstances, counsel's performance was outside the wide range of professional

competence.   *See Strickland*, 466 U.S. at 690.   When reviewing counsel's decisions,

"the issue is not what is possible or 'what is prudent or appropriate, but only what is

constitutionally compelled.'"   *Chandler v. United States*, 218 F.3d 1305, 1313 (11th

Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).   Furthermore,

"[t]he burden of persuasion is on a petitioner to prove, by a preponderance of

competent evidence, that counsel's performance was unreasonable." *Chandler*, 218

F.3d at 1313.   This burden of persuasion, though not insurmountable, is a heavy

one.   *See id.* at 1314.   "Judicial scrutiny of counsel's performance must be highly

deferential," and courts "must avoid second-guessing counsel's performance."   *Id.* at

1314 (quoting *Strickland*, 466 U.S. at 689).   "Courts must 'indulge [the] strong

presumption' that counsel's performance was reasonable and that counsel 'made all

significant decisions in the exercise of reasonable professional judgment.'"   *Id.*

(quoting *Strickland*, 466 U.S. at 689-90).   Therefore, "counsel cannot be adjudged

incompetent for performing in a particular way in a case, as long as the approach

taken 'might be considered sound trial strategy.'" *Id.* (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).

If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. *See id.* at 1314-15 n.15. Thus, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Id.* Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." *Id.* at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." *Id.* To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." *Id.* at 1315 n.16. Finally, "[n]o absolute rules dictate what is reasonable performance for lawyers." *Id.* at 1317.

*Strickland's* "prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004). This requires a showing that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

2.   <u>Petitioner's counsel was not constitutionally ineffective for failing to file a meritless direct appeal</u>.

An attorney who disregards instructions from his client to appeal has acted "in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).   Moreover, when an attorney fails to follow express instructions to appeal, prejudice is presumed.   528 U.S. at 483; *Gomez-Diaz v. United States*, 433 F.3d 788, 790-92 (11th Cir. 2005).   If the petitioner did not specifically direct his attorney to file an appeal, however, a reviewing court must inquire whether the attorney consulted with the petitioner regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the petitioner's wishes.   *Flores-Ortega*, 528 U.S. at 478.   If so, the attorney has acted unreasonably only if he ignored the petitioner's wishes to appeal.   *Id.*   Highly relevant factors include whether the conviction resulted from a trial or a plea and whether the defendant expressly waived his appellate rights.   *Id.*

Here, the defendant's lawyers consulted with the defendant about filing an appeal, but the defendant did not request that his lawyers file the appeal.   The petitioner submitted an affidavit with his motion, but failed to state anywhere in that affidavit that he instructed his lawyers to file an appeal.   Doc. 11-2.   In addition, both of the defendant's lawyers have submitted the attached exhibits, Attachments A and B, indicating affirmatively that the defendant did not file an appeal.   Therefore,

12

the defendant has not established grounds for ineffective assistance of counsel.

*Compare Bolton v. United States*, 221 F. App'x 880, 882 (11th Cir. 2007) (holding that

conflicting affidavits may give rise to an evidentiary hearing)

        3.     <u>Petitioner's counsel was not constitutionally ineffective for failing to call witnesses at the suppression hearing because the Court prevented the defendant from presenting the testimony the defendant proposes.</u>

Petitioner contends that he was deprived of his right to effective assistance of

counsel when his counsel failed to call certain witnesses at a hearing regarding a

motion to suppress.   Case 2:16-cv-884-SPC-CM, doc. 10 at 6.   Specifically, the

Petitioner references the motion to suppress the physical evidence found during the

execution of a search warrant the day of his arrest.   Case 2:16-cv-884-SPC-CM, doc.

11 at 4.   Petitioner asserts that his Counsel should have called two witnesses to

testify at his suppression hearing.   Case 2:16-cv-884-SPC-CM, doc. 10 at 6.

Specifically, Detective Langton, who secured both the arrest and search warrants in

Petitioner's case, and Juanita Scott, Petitioner's grandmother who claimed the

weapons belonged to her late husband before he died.   Case 2:16-cv-884-SPC-CM,

doc. 11 at 3; Case 2:16-cv-884-SPC-CM, doc. 11-2 at 2.

Petitioner was not entitled to call those witnesses at the hearing, however.

Specifically, the Court held that he was not entitled to a hearing on those validly-

issued warrants under *Franks v. Delaware*, 438 U.S. 154 (1978).   Case 2:15-cr-00042-

SPC-CM. Doc. 49 at 2.[1]   Therefore, Langton's testimony was barred.   Moreover, Scott's proposed testimony that the guns belonged to her deceased husband was also not only barred, but irrelevant to the suppression hearing.   Specifically, the testimony did not relate to the constitutionality of the search, but would, at most be an argument for a potential trial.   It is also worth noting that the fact that the assault rifles, which Felton admitted were his, were previously owned by a now-deceased individual would not be a defense to Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. § 922(g).   The defendant also sought to suppress his second statement to law enforcement on the grounds that law enforcement officers failed to properly issue him *Miranda* warnings, and the Court did hold a hearing on that question.   Case 2:15-cr-00042-SPC-CM, doc. 48.   The petitioner's proffered testimony of Scott and Langton, however, would have been similarly irrelevant to the *Miranda* issue.   Therefore, defendant's claim lacks merit.

          4.   <u>Petitioner's counsel was not constitutionally ineffective for failing to raise a meritless challenge to the petitioner's Armed Career Criminal Act sentencing enhancement</u>

Petitioner claims that his counsel provided ineffective assistance by failing to understand Florida law by challenging his enhanced sentence under the Armed

---

[1] Defendant also argues, in doc. 21, in an amendment to his § 2255 petition, that there were no "exigent circumstances" to search the house.   Nevertheless, the record, including the Court's decisions, docs. 48, 49, and 50, indicate that the house was searched pursuant to two validly-issued search warrants, so exigent circumstances are irrelevant.

Career Criminal Act ("ACCA").   Case 2:16-cv-884-SPC-CM, doc. 10.   The

ACCA mandates a 15-year minimum sentence for a defendant who has three prior

convictions for a violent felony or a serious drug offense and who is convicted of

violating 18 U.S.C. § 922(g).   18 U.S.C. § 924(e)(1).   The ACCA defines "serious

drug offense" to include "an offense under State law, involving manufacturing,

distributing, or possessing with intent to manufacture or distribute, a controlled

substance . . . for which a maximum term of imprisonment of ten years or more is

prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).   The ACCA's definition of serious

drug offense "broadly includes any offense 'involving' the manufacture, distribution,

or possession with the intent to manufacture of distribute." *United States v. James*, 430

F.3d 1150, 1155 (11th Cir. 2005); *overruled on other grounds by Johnson v. United States*,

135 S. Ct. 2251 (2015).

Felton argues that his counsel should have challenged his classification as an

armed career criminal on the ground that his Florida drug-trafficking conviction does

not qualify as a "serious drug offense" under the ACCA. That statute, Fla. Stat. §

893.135(1)(b), provides that a "person who knowingly sells, purchases,

manufactures, delivers, or brings into this state, or who is knowingly in actual or

constructive possession of 28 grams of more of cocaine . . . , commits a felony of the

first degree . . . ."   Felton argues that his conviction under the trafficking statute

does not qualify because he could have been convicted of having purchased 28 or

more grams of cocaine.   But the Eleventh Circuit already has held that the Florida offense of drug trafficking in violation of Fla. Stat. § 893.135(1)(b) categorically qualifies as a "serious drug offense" under the ACCA.   *James*, 430 F.3d at 1155. And, the Eleventh Circuit reaffirmed *James* recently in *United States v. White*, 837 F.3d 1225, 1235 (11th Cir. 2016).

Because *James* analyzed the identical Florida statute and concluded that it qualifies as a "serious drug offense" under the ACCA, this Court must follow *James*. Felton may attempt to limit the holding in *James* to offenses that involve the possession of cocaine, and not the purchase of cocaine.   But the holding in *James* is not so narrow.   In *James*, the Eleventh Circuit concluded that the language of the Florida statute need not exactly match the ACCA's definition of a 'serious drug offense'" because the ACCA's definition of serious drug offense "broadly includes any offense 'involving' the manufacture, distribution, or possession with the intent to manufacture of distribute." 430 F.3d at 1155.   The Eleventh Circuit then held that "the Florida statute falls within the broad definition of a 'serious drug offense.'"   *Id.*

Further, in *James*, the Eleventh Circuit noted that Florida had a three-tiered scheme for punishing drug-related offenses and that under this scheme, drug trafficking is a more serious offense and is punished more harshly than simple possession or possession with intent to distribute.   *James*, 430 F.3d at 1154–55. Relying on *United States v. Madera-Madera*, 33 F.3d 1228 (11th Cir. 2003) — which

concluded that a similar Georgia drug scheme recognizes that someone who is convicted of drug trafficking necessarily plans on distributing those drugs — the Eleventh Circuit held in *James* that Florida's drug-trafficking statute infers the intent to distribute from the amount of cocaine involved.  *Id*. at 1154.  Moreover, the Eleventh Circuit recognized that because the lesser offense of possession with intent to distribute qualifies as a "serious drug offense," to hold that Florida's more serious drug-trafficking offense was not a "serious drug offense" would create an anomaly that would thwart the ACCA's purpose.  *Id*. at 1155.  The Eleventh Circuit, therefore, recognized in *James* that Fla. Stat. 893.135 broadly criminalizes drug-trafficking, i.e. the distribution of drugs.

But, even if this were an open issue after *James* as Felton might propose, *James* compels the same outcome for a conviction for the purchase of cocaine under Florida's drug-trafficking statute. Butler argues that the ACCA definition does not include the act of purchase, relying on *United States v. Shannon*, 631 F.3d 1187 (11th Cir. 2011).   Felton puts misplaced reliance on *Shannon*.   *Shannon* considered the drug-trafficking statute under the career offender guidelines, *see id*. at 1188–89, and the career offender guideline defines a "controlled substance offense" more narrowly than the ACCA defines a "serious drug offense."

The ACCA differs from the career offender guideline analyzed in *Shannon*, which does not contain the word involves. *Compare* 18 U.S.C. § 924(e)(2)(A)(ii), with

USSG §4B1.2(b); *see also White*, 837 F.3d at 1235 ("[T]here is general agreement among the circuits that the ACCA's definition of a serious drug offense is broader than the guidelines definition of a drug trafficking or a controlled substance offense because of the ACCA's use of the term 'involving.'").   *Shannon*'s holding, therefore, that a prior conviction that involved no more than purchase with the intent to distribute is not a controlled substance offense under the career offender guidelines does not control here.

As just discussed, this Court already has reasoned that the language of the state statute need not exactly match the ACCA's definition of a "serious drug offense."   *James*, 430 F.3d at 1155; *see also White*, 837 F.3d at 1235 (reaffirming reasoning in *James*).   Rather, the ACCA's "'involving' language makes clear that the term 'serious drug offense' may include even those state offenses that do not have as an element the manufacture, distribution, or possession of drugs with intent to manufacture or distribute."   *James*, 430 F.3d at 1155 (emphasis added); *see also White*, 837 F.3d at 1335 (noting that other circuits have rejected argument that "offense cannot qualify unless it expressly requires 'actual distribution or manufacture, or a specific intent to distribute or manufacture'").   That the ACCA's definition of "serious drug offense" does not contain the word "purchase," therefore, is not dispositive. Instead, the dispositive issue is whether the statute involves the manufacture, distribution, or possession with intent to manufacture or distribute.

The Florida drug-trafficking statute involves the distribution of drugs — even when predicated on purchase.    The Eleventh Circuit recognized in *Shannon* — the very case on which Felton relies — that a violation of Florida's drug-trafficking statute involves, at the minimum, "the purchase with intent to distribute." 631 F.3d at 1190.   *Shannon*'s statement that Florida's drug-trafficking statute's prohibition of the purchase of drugs means purchase with the intent to distribute, follows logically from *James*, which as discussed above recognizes that this statute broadly criminalizes drug trafficking. Thus, based on *Shannon*, a conviction for cocaine trafficking based on the purchase of cocaine involves the intent to distribute.   That is sufficient to satisfy the ACCA's broad definition of "serious drug offense," which, as the Eleventh Circuit held in *James*, encompasses crimes involving distribution. Because Felton has failed to demonstrate that his conviction for trafficking in illegal drugs — even if premised on the purchase of cocaine —does not qualify as a "serious drug offense" under the ACCA.[2]

>    5.    <u>Petitioner's counsel was not constitutionally ineffective for failing to uncover Petitioner's status as an informant because Petitioner was not an informant, nor did he have the authority to possess heroin, crack cocaine, Xanax, and two assault rifles.</u>

Petitioner's argument again fails on this prong for at least two reasons.   First, the defendant was not an informant for the Fort Myers Police Department.   Doc. 48

---

[2] These issues are currently briefed and pending decision by the Eleventh Circuit Court of Appeals in *United States v. Butler*, 8:15-CR-454-T-24JSS (11th Cir.)

("Agent Petaccio *was in the process of* turning him into a confidential informant.") (emphasis added).   Moreover, even if petitioner was a confidential informant for the Fort Myers Police Department, there is no evidence whatsoever that the FMPD permitted him to possess two assault rifles and 9 ounces of heroin, along with crack cocaine and Xanax, at his house.   He has not otherwise pled that he was given such permission to possess the firearms or drugs in this case.   In fact, defendant's custodial interview indicates otherwise.   Specifically, when asked about the drugs and assault rifles in his grandmother's house, petitioner indicated they were his, not the FMPD's, and he made no mention that Fort Myers Police authorized him to possess those items.

> 6.   Petitioner's counsel was not constitutionally ineffective for failing to notify Petitioner that the seized funds were subject to forfeiture proceedings in state court.

The defendant's claim relating to forfeiture fails because § 2255 does not apply to criminal forfeiture.   *United States v. Finze*, 428 Fed.Appx. 672, 677 (9th Cir. 2011) (holding that § 2255 may not be used to challenge a criminal forfeiture order because it applies only to the custodial aspect of a criminal sentence); *Winkelman v. United States*, 494 Fed.Appx. 217, 220 n.4 (3d Cir. 2012) (same); *Rodriguez v. United States*, 132 F.3d 30 (1st Cir. 1997) (holding that relief from monetary-type penalty, as opposed to release from confinement, is not cognizable under § 2255).   Moreover, even if the defendant's claim was cognizable on a § 2255 petition, these issues have

already been addressed and foreclosed by the Court's ruling in Doc. 98.   Therefore, the Court should deny the relief on these grounds

### 7.   Petitioner's Plea was Counseled and Voluntary

Petitioner asserts that his plea was involuntary because he was innocent of the crime and he was coerced by his counsel.   "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence.   Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.   If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.   There are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989).

Plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977) ("To allow indiscriminate hearings in federal postconviction proceedings for federal prisoners under 28 U.S.C. § 2255 would eliminate the chief virtues of the plea system—speed, economy, and finality"). Although § 2255 exists "to safeguard a person's freedom from detention in violation of constitutional guarantees," the Court observed that "[m]ore often than not a

prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71–72. As a result, "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74 (explaining that if the record reflects the procedures of plea negotiation and includes a verbatim transcript of the plea colloquy, a petitioner challenging his plea will be entitled to an evidentiary hearing "only in the most extraordinary circumstances"). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74; *see also Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014).

Here, the petitioner alleges only that he was "coerced" to plead guilty, but does not allege why or how – only that he was innocent of the offense. Moreover, the record reflects that the United States dropped at least one charge that was at least as serious as the charge to which he pled, and the defendant has not alleged that he was actually innocent of that charge either. Therefore, his claim fails.

III.   **CONCLUSION**

THEREFORE, the United States requests that this Court deny defendant's

motion pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

W. STEPHEN MULDROW
Acting United States Attorney

By:   *s/ Charles D. Schmitz*
CHARLES D. SCHMITZ
Assistant United States Attorney
USAO No. 159
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:     (239) 461-2200
Facsimile:      (239) 461-2219
Email: Charles.Schmitz@usdoj.gov